**Albert P. RAGAN, Jr. d/b/a Avondale Depot, Respondent,**

v.

**Charles E. SMARR, Supervisor of Liquor Control, State of Missouri, Appellant.**

**No. WD 44021.**

Missouri Court of Appeals, Western District.

June 18, 1991.

William L. Webster, Atty. Gen., Deborah Ground Buckner, Asst. Atty. Gen., Jefferson City, for appellant.

John Gregory Dorsey, Dorsey, Brannon & Dorsey, North Kansas City, for respondent.

Before NUGENT, C.J., TURNAGE and GAITAN, JJ., and WASSERSTROM, Senior Judge.

TURNAGE, Judge.

The Supervisor of Liquor Control issued a disciplinary order suspending the liquor license of Albert P. Ragan, Jr., d/b/a Avondale Depot. Ragan appealed to the Administrative Hearing Commission and the Commission found there was ground for disciplining the license of Ragan.

Thereafter the Supervisor suspended Ragan's liquor license for five days. Ragan appealed to the circuit court which reversed the decision and the Supervisor appealed to this court. The Supervisor contends there is sufficient evidence to support the disciplinary order. Reversed and remanded.

In August, 1988, the Supervisor ordered that the liquor license of Ragan, issued for the operation of the Avondale Depot, be suspended for five days for the violation of 11 C.S.R. 70–2.130(13). Ragan filed an appeal with the Administrative Hearing Commission pursuant to § 311.691, RSMo 1986.[1] Pursuant to § 621.045.1 the Commission held a hearing. Betty Henderson testified at the hearing that she was in the Avondale Depot at about 9:00 p.m. on February 6, 1988, when Ragan entered the bar. Ragan's wife, Sandy, was managing the bar that evening but when Ragan arrived she was not present. Ragan saw one patron behind the bar and one near the end of the bar and became angry. A band had begun to play about the time Ragan entered and after he became angry he ordered the band to stop playing and pack their instruments and leave. Ragan announced in a loud tone that the bar was closing and everyone should leave. Henderson testified that at this point emotions rose in the bar and individuals began shouting loudly and pushing one another in reaction to the order that Ragan gave for everyone to leave.

Henderson testified that she had known Ragan for some time and she approached him and protested the closing. Ragan told her the bar was closing. Henderson returned to her seat and later approached Ragan again to protest the closing. Ragan testified that Henderson grabbed him on each side of the face while she made her protest. Henderson stated that Ragan knocked her down and that she injured her head and leg. Ragan denied that he had knocked her down.

There was evidence that a patron was approaching Ragan quickly and aggressively while he and Henderson were talking. The patron jumped on Ragan. Ragan turned to confront this person and it was at this point that Henderson fell to the floor.

The Commission found essentially that Ragan became angry, ordered the band to stop playing and announced that the bar was closing. It further found that emotions rose in the bar and that people began shouting loudly and pushing one another. The Commission found that a patron jumped on Ragan and as he turned to confront the patron he made contact with Henderson so that she fell to the floor injuring her head and leg.

The Commission concluded that the decision hinged on what testimony the Commission concluded was credible. The Commission concluded that there was a violent quarrel at the Avondale Depot and further found that Ragan by his angry reaction and rash decision to close the bar caused the problem. The Commission concluded that Ragan had violated 11 C.S.R. 70–2.130(13)(A). The Commission returned the case to the Supervisor for the assessment of discipline pursuant to § 621.110. The Supervisor thereafter suspended Ragan's license for five days.

■ On review of the Commission's findings and conclusions this court cannot substitute its judgment of the facts unless the Commission's findings are unsupported by competent and substantial evidence on the whole record. *Walker v. Supervisor of Liquor Control,* 781 S.W.2d 113, 114 (Mo. App.1989). In this case the determination of whether the Commission's findings of fact are supported by competent and substantial evidence rests wholly on the assessment of the credibility of the witnesses. According to Henderson there was shouting, pushing and shoving and she was knocked to the floor after Ragan announced that the bar was closing. Ragan testified that there was nothing untoward which happened and denied there was any shouting or disturbance. The assessment of credibility of the witness was for the Commission to resolve and in doing so it could believe all, part, or none of the testi-

---

1. All sectional references are to RSMo 1986, unless otherwise indicated.

mony of any witness. *Welty v. Bd. of Chiropractic Examiners,* 759 S.W.2d 295, 298[6] (Mo.App.1988). In this case the Commission chose to believe much of the testimony of Henderson. That testimony supplies the requisite foundation for the Commission's findings of fact.

11 C.S.R. 70–2.130(13)(A) reads: "At no time, under any circumstances, shall any licensee or his/her employees fail immediately to prevent or suppress any violent quarrel, disorder, brawl, fight or other improper or unlawful conduct of any person upon the licensed premises...." Violent is defined as extremely excited, emotionally aroused; quarrel is defined as a conflict between antagonists; and disorder is defined as a breach of public order, disturbance of the peace of society. Webster's Third New International Dictionary (1971).

■ There was evidence which supported the Commission's finding that there was a violent quarrel and disorder at the time in question. There was evidence that patrons began shouting and pushing one another and there was certainly conflict between antagonists as evidenced by the confrontation between Henderson and Ragan and between Ragan and a patron who jumped on him. The events were violent as demonstrated by the activities just mentioned. There was substantial and competent evidence to support the Commission's finding that Ragan violated 11 C.S.R. 11–2.-130(13)(A). The finding by the Commission allowed the Supervisor to impose a discipline on Ragan's license.[2]

The judgment is reversed and this cause is remanded with directions to enter judgment affirming the decision of the Supervisor to suspend Ragan's license at the Avondale Depot for five days.

All concur.

---

**2.** The Supervisor's order which imposed discipline on Ragan's license stated that the license was "suspended for five (5).... [sic]" Ragan makes some point that it is not clear if this refers to five days or some lesser or greater amount of time. The Supervisor ordered Ra-gan's license suspended for five days prior to the appeal Ragan took to the Administrative Heading Commission. From the record it is clear that the discipline ordered by the Supervisor is a suspension of the license of five days.